1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PHYLLIS WILKINS,                         No.  2:15-cv-02341-KJM-EFB

12                  Plaintiff,

13          v.                                 ORDER

14   BANK OF AMERICA, N.A., BANK OF
     AMERICA HOME LOANS, BANK OF
15   NEW YORK MELLON FKA THE BANK
     OF NEW YORK, AS TRUSTEE FOR
16   THE CERTIFICATE HOLDERS OF THE
     CWABS, INC. ASSET BACKED
17   CERTIFICATES, SERIES 2006-10AC,
     and DOES 1-20, inclusive,
18
                    Defendants.
19

20

21          Plaintiff Phyllis Wilkins (plaintiff) filed a complaint on November 11, 2015

22   against defendants Bank of America, N.A. (BANA), Bank of America Home Loans,[1] Bank of

23   New York Mellon (BNYM) formerly known as the Bank of New York (collectively defendants),

24   and doe defendants[2] regarding a loan transaction on plaintiff's primary residence.  Compl., ECF

25   _____

26      [1] Defendants argue Bank of America Home Loans was erroneously named in lieu of BAC
     Home Loans Servicing LP.  Mot., ECF No. 6 at 1.

27      [2] The Ninth Circuit provides "'[plaintiffs] should be given an opportunity through
     discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the
28   alleged defendant[] [is] not [] known prior to the filing of a complaint.'"  *Wakefield v. Thompson*,

                                                   1

No. 1.  The case is now before the court on defendants' motion to dismiss plaintiff's complaint.
Mot., ECF No. 6.

For reasons explained below, the court GRANTS defendants' motion to dismiss in part, with leave to amend, and DENIES it in part.

I.      JUDICIAL NOTICE

Defendants request the court take judicial notice of the following documents:

Exhibit A: a deed of trust (DOT) to plaintiff's primary residence (the Property);

Exhibit B: an assignment of DOT dated August 11, 2011;

Exhibit C: a corporation assignment of DOT dated September 13, 2011;

Exhibit D: a notice of default (NOD) dated September 12, 2011;

Exhibits E–H, J: six notices of trustee's sale (NOTS);

Exhibit I: a substitution of trustee dated April 2, 2014;

Exhibits L–Q: filings from a state court action including, the complaint, defendants' answer, the notice of ruling on defendants' demurrers, and plaintiff's request for dismissal of the state action.

Request for Judicial Notice (RJN), Exs. A–Q.

A court may take judicial notice of adjudicative facts "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Plaintiff disputes the accuracy of the content of the exhibits covered by defendants' request for judicial notice.  Opp'n at 7–8.  Plaintiff contends defendants were responsible for the filing of the Substitution of Trustee and NOTS.  Id.  Plaintiff alleges defendants have admitted that they submitted falsified

---

177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) (modifications in original).  Plaintiff is cautioned that such defendants will be dismissed where "'it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'"  *Id.* (quoting *Gillespie*, 629 F.2d at 642).  Federal Rule of Civil Procedure 4(m), as recently amended, provides for dismissal of defendants  not served within 90 days of filing of the complaint unless plaintiff shows good cause. *See Glass v. Fields*, No. 1:09-cv-00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. 11-01567, 2011 U.S. Dist. LEXIS 109837, at *2-4 (N.D. Cal. Sep. 27, 2011).

1   documents to County Recorder's Offices and the court.  *Id.* (citing Compl. ¶ 11).  All the exhibits

2   covered by defendants' request are public records, and generally a court may take judicial notice

3   of the existence of matters of public record.  *Lee v. Cty. of Los Angeles*, 250 F.3d 668, 688 (9th

4   Cir. 2001).  However, courts may not take judicial notice of facts subject to reasonable dispute.

5   *Lee*, 250 F.3d at 689.

6   　　　　The court GRANTS defendants' request for judicial notice of exhibits A through

7   Q for the fact that the documents exist, but not for the truth of the matters asserted in the

8   documents.  *See United States v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 802 (N.D. Cal. 2014); *see*

9   *also Green v. Cent. Mortgage Co.*, 148 F. Supp. 3d 852, 863 (N.D. Cal. Dec. 1, 2015) (court may

10  take judicial notice of existence of documents without taking judicial notice of disputed facts

11  within them).

12  II.　　INTRODUCTION

13  　　　　A.　　Procedural History

14  　　　　On January 28, 2015, plaintiff filed suit in the Placer County Superior Court

15  against defendant (the state action).  ECF No. 7-1, Ex. L.  On November 24, 2015, after two

16  rounds of demurrers, plaintiff sought dismissal of the state action without prejudice.  RJN, Ex. Q.

17  The parties have yet to inform the court whether the Superior Court granted dismissal.

18  　　　　Plaintiff filed the complaint in this action on November 11, 2015, prior to

19  plaintiff's request for dismissal of the state action, against the same defendants as in the state

20  action.  Compl., ECF No. 1.  The complaint alleges, against all defendants: (1) violations of

21  California's Homeowner's Bill of Rights (HBOR), California Civil Code sections 2923.6,

22  2924.18 and 2923.7, (2) violation of Rosenthal Act, California Civil Code section 1788.17, (3)

23  violation of California's Unfair Competition Law, Business and Professions Code section 17200

24  (UCL), (4) breach of contract, (5) breach of the implied covenant of good faith and fair dealing,

25  (6) fraud, (7) negligence, and (8) promissory estoppel.

26  　　　　On December 21, 2015, defendants filed the pending motion to dismiss.  Plaintiff

27  opposed.  Opp'n, ECF No. 12.  Defendants replied.  Reply, ECF No. 14.

28  /////

B.      Factual Allegations

Unless otherwise stated, the following factual allegations are made in plaintiff's complaint.

On May 15, 2006, a deed of trust was recorded for $490,229 as a security interest for a loan transaction on the Property.  Compl. ¶ 8.  The deed of trust recorded at the time listed plaintiff as a borrower, America's Wholesale Lender as the lender, and ReconTrust N.A. as the trustee.  *Id.*  On September 14, 2011, a corporate assignment of deed of trust was recorded, assigning the deed of trust to BNYM as trustee for the Certificate Holders of the CWABS Inc., Asset-Backed Certificates Series 2006-10.  *Id.* ¶ 9.  It is unclear from the complaint what the relationship is between BNYM and BANA.  BANA argues in its motion to dismiss that it was the attorney-in-fact for BNYM when it substituted MTC Financial Inc. d/b/a Trustee Corps as trustee on April 2, 2014.  Mot. at 2.

On September 14, 2011, a NOD was recorded by ReconTrust Company.  *Id.* ¶ 10.  Several NOTS were recorded between December 2011 and March 2015.  *See* RJN, Exs. A–K.  As noted above, plaintiff disputes the factual contents of several of the exhibits within defendants' request for judicial notice, including the factual content of the NOTS.

On or about May 14, 2014,[4] BANA, alternately called "defendant" in the complaint, notified plaintiff she had been approved for a Trial Payment Plan (TPP), or trial modification, under the federal Home Affordable Modification Program (HAMP).[5]  *Id.* ¶ 14.  As provided by a written notification, plaintiff was required to make the first payment to accept the TPP offer.  *Id.*  The written notification also states the loan modification would become permanent once all three trial modification payments were made.[6]  *Id.*  The complaint does not

[4] Throughout plaintiff's complaint and opposition, the dates May 9, 2014 and May 14, 2014 are used interchangeably as the date when plaintiff received the notification that she had been approved for a TPP.

[5] Plaintiff does not allege when she applied for the loan modification that resulted in the approval for the TPP.

[6] The terms of the TPP, as alleged in the complaint, seem to be contained in the notification letter to plaintiff dated May 9, 2014.  A notification letter stating plaintiff was approved for a TPP was attached to the complaint filed in the state action; however, as the terms of the TPP are disputed, and neither party points to the attachment as the actual written

4

1    allege the specific dates the payments were due.  It does say the written notification stated

2    plaintiff's permanent loan amount payment would be the same, and/or similar to the payments

3    required under the TPP, and once the loan modification was made permanent, BANA would

4    waive certain fees, costs, charges and/or expenses originally levied against plaintiff.  *Id.*

5            Plaintiff alleges all payments required by the terms of the TPP were made

6    according to the terms.  *Id.* ¶ 18.  Plaintiff timely made the first payment at an unspecified time.

7    *Id.* ¶¶ 14, 15, 62.  Plaintiff also alleges all the other payments required by the TPP were made,

8    and they were also accepted and endorsed by defendants, one of which is BANA.  *Id.* ¶¶ 16, 62.

9    On or about August 2014, after receipt of the third and final payment by plaintiff, BANA notified

10   plaintiff she had failed to make timely payments.  *Id.* ¶¶ 18, 63.  BANA refused to accept any

11   further payments and informed plaintiff she was in default.  *Id.*  BANA and other defendants filed

12   a notice of trustee sale with a sale date of February 2, 2015.  *Id.* ¶ 19.

13           Plaintiff made multiple requests for information regarding the reasons BANA no

14   longer accepted any payments from plaintiff, and for foreclosure prevention alternatives.  *Id.* ¶ 23.

15   The only explanation BANA provided was that plaintiff "did not comply with the terms" of the

16   TPP.  *Id.*  After plaintiff had made all the payments and completed her obligations under the TPP,

17   Ebony Simms and Jennifer Johnson were assigned to plaintiff as her single point of contact

18   (SPOC).  *Id.* ¶ 32.  Plaintiff alleges both were nonresponsive, failed to provide information

19   concerning loss mitigation programs and intentionally lied about the status of the foreclosure

20   proceeding.  *Id.*

21           As of the date the complaint was filed, the NOD and a trustee sale were still

22   pending.  *Id.* ¶ 24.

23   /////

24   /////

25   /////

26   /////

27   _____

28   notification alleged in the complaint here, the court does not rely on the contents of the document.
     RJN, Ex. L at 71.

1    III.    LEGAL STANDARDS

2         A.    Rule 12(b)(6)

3         A complaint need contain only a "short and plain statement of the claim showing

4    that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations,"

5    *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than

6    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Conclusory or formulaic recitations of a claim's

7    elements do not alone suffice.  *Id.* (quoting *Twombly*, 550 U.S. at 555).

8         A party may thus move to dismiss for "failure to state a claim upon which relief

9    can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks

10   a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

11   *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).  In making this

12   context-specific evaluation, this court "must presume all factual allegations of the complaint to be

13   true and draw all reasonable inferences in favor of the nonmoving party."  *Usher v. City of Los*

14   *Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  This rule does not apply to "'a legal conclusion

15   couched as a factual allegation,'"  *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in*

16   *Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial

17   notice" or to material attached to or incorporated by reference into the complaint.  *Sprewell v.*

18   *Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).

19        A court's consideration of documents attached to a complaint or incorporated by

20   reference or matter of judicial notice will not convert a motion to dismiss into a motion for

21   summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of*

22   *Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *but see Van Buskirk v. Cable News*

23   *Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (even though court may look beyond pleadings

24   on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

25        Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be

26   freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to

27   facilitate decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*,

28

6

1    203 F.3d 1122, 1127, 1140 (9th Cir. 2000) (en banc) (internal quotation marks and alterations

2    omitted).

3    B.     <u>Rule 9(b)</u>

4           Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud

5    or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

6    Fed. R. Civ. P. 9(b).   A court may dismiss a claim grounded in fraud when its allegations fail to

7    satisfy Rule 9(b)'s heightened pleading requirements. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d

8    1097, 1107 (9th Cir. 2003).   The plaintiff must include "the who, what, when, where, and how" of

9    the fraud. *Id.* at 1106 (citations omitted).   "The plaintiff must set forth what is false or misleading

10   about a statement, and why it is false." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir.

11   1994).   A claim for fraud must be "specific enough to give defendants notice of the particular

12   conduct which is alleged to constitute the fraud charged so that they can defend against the charge

13   and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731

14   (9th Cir. 1985).

15   IV.     <u>DISCUSSION</u>

16        A.     <u>Homeowner's Bill of Rights (HBOR)</u>

17            1.     <u>Sections 2924.18 and 2923.6(c)–(h)</u>

18          The HBOR, which took effect January 1, 2013, attempts to eliminate the practice,

19   commonly known as dual tracking, whereby financial institutions continue to pursue foreclosure

20   even while evaluating a borrower's loan modification application. *See Jolley v. Chase Home*

21   *Finance, LLC*, 213 Cal. App. 4th 872, 904 (2013).   The HBOR sections targeting dual tracking

22   are California Civil Code section 2924.18, which applies to "small volume" servicers, and section

23   2924.6(c)-(h), which applies to all other servicers.   *See* Cal. Civ. Code § 2924.18(b) ("This

24   section shall apply only to a depository institution . . . that, during its immediately preceding

25   annual reporting period . . . foreclosed on 175 or fewer residential real properties . . . ."); Cal. Civ.

26   Code § 2923.6(i) ("Subdivisions (c) to (h), inclusive, shall not apply to entities described in

27   subdivision (b) of Section 2924.18"); *see also Rockridge Trust v. Wells Fargo NA*, No. 13-01457,

28   2014 WL 688124, at *20 (N.D. Cal. Feb. 19, 2014).

It is unclear from the parties' briefing and plaintiff's complaint which section applies to defendants and thus which of the two provisions applies.  The court will therefore analyze both, while noting that defendants cannot actually violate both sections at the same time, because they cannot be both small and not small volume servicers.

Both sections 2924.18 and 2923.6 provide that "while a borrower's complete application for a first lien loan modification is pending, the servicer may not record a notice of default, notice of trustee's sale, or conduct a trustee's sale." *Rockridge*, 2014 WL 688124, at *21 (citing Cal. Civ. Code §§ 2924.18(a)(1), 2923.6(c)).  Section 2923.6, which applies to "large volume" servicers, provides additional requirements for servicers if a loan modification is denied. *See id.*  Section 2923.6(f) requires servicers to provide a written notice of denial explaining the reasons for the denial in detail.  Section 2923.6(g), which limits the applicability of the section, states that:

> [T]he mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

Cal. Civ. Code § 2923.6(g).  In moving to dismiss plaintiff's first cause of action, defendants argue (1) plaintiff did not comply with the TPP, (2) plaintiff does not allege a "material change" in her circumstance, and (3) BANA was not the servicer in December 2014.

### a)      Compliance with the TPP

First, the court looks at defendants' argument with respect to compliance.  Plaintiff alleges defendants evaluated her loan modification application and provided her with a TPP. Compl. ¶¶ 14–17.  Plaintiff accepted the TPP and she says she made all payments as required. *Id.* Defendants argue plaintiff did not comply with the terms of the TPP.  Mot. at 7.  In a motion to dismiss, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher*, 828 F.2d at 561.  Thus, whether or not plaintiff actually complied with the terms of the TPP is a factual question that cannot be

1    answered at this stage of the proceeding given that plaintiff alleges compliance in the complaint.

2    This does not mean defendants are prevented from raising the issue again at a later stage of this

3    case. *Corvello v. Wells Fargo, NA*, 728 F.3d 878, 885 (9th Cir. 2013) (per curiam) (while facts in

4    defendant's possession might indicate it properly denied plaintiffs' loan modifications, they could

5    not be considered at motion to dismiss stage).

6              Defendants also argue that plaintiff concedes she had been informed her

7    modification was declined because she was not in compliance with the terms of the TPP;

8    therefore, there was no pending review when the NOTS was recorded on February 2, 2015. Mot.

9    at 7 (citing Compl. ¶¶ 18–19). Defendants cannot cherry-pick plaintiff's allegations in this way.

10   Plaintiff does not concede she did not comply with the TPP. Compl. ¶ 18. Rather, plaintiff

11   alleges BANA denied plaintiff a permanent loan modification even though she made the required

12   payments in a timely manner. *Id.* Plaintiff also alleges defendants violated sections 2923.6(c)

13   and 2924.18 by failing to provide a written determination of the review and the option to appeal

14   the denial. Compl. ¶ 9; *see* Cal. Civ. Code §§ 2923.6(c)–(d), 2924.18(a)(1).

15                              b)      Material Change

16             Defendants also argue plaintiff does not allege the existence of a "material

17   change" in her financial circumstances under section 2923.6(g). Mot. at 7. Plaintiff argues that

18   reliance on section 2923.6(g) is unnecessary because her loan modification request had already

19   been submitted and approved "as outlined in the May 9, 2014 letter notifying plaintiff that she

20   had been approved for a TPP." Opp'n at 7. The question is not whether defendants were

21   obligated to evaluate the loan modification application; plaintiff alleges defendants evaluated the

22   application and determined, at least in 2014, that plaintiff qualified for a TPP. Compl. ¶¶ 14–17.

23   Plaintiff's allegations concern whether defendants have fulfilled the other requirements of section

24   2923.6, such as the lack of a written determination that plaintiff was ineligible for a loan

25   modification and the option to appeal the denial of a permanent loan modification, after

26   defendants made the decision to evaluate the loan modification application. It is unclear whether

27   defendants are arguing that section 2923.6(g) was applicable to section 2923.6 alone, or to both

28   sections 2924.18 and 2923.6. The court thus finds it necessary to clarify that section 2923(g)

1   applies only to section 2923.6, and does not limit the "small volume" servicers in section

2   2924.18.  *Rockridge*, 2014 WL 688124, at *22.

3           Drawing all inferences in plaintiff's favor, plaintiff has alleged sufficient facts to

4   state a claim.  *See Vasquez v. Bank of Am.*, N.A., No. 13-02902, 2013 WL 6001924, at *9 (N.D.

5   Cal. Nov. 12, 2013) (on a motion to dismiss, plaintiff has alleged sufficient facts to state a claim

6   under section 2923.6 without alleging "material change," where defendants were not obligated to

7   evaluate a loan modification application but did so anyway).

8                   c)      Servicer

9           BANA also argues it could not have violated sections 2923.6 or 2924.18 because

10  Green Tree Servicing LLC, rather than BANA was the servicer in December 2014 when the 2014

11  notice of trustee's sale was recorded.  Mot. at 7 (citing RJN, Ex. K).[7]  Both sides appear confused

12  regarding which NOTS is at issue here.  Their arguments oscillate between focusing on the 2014

13  NOTS and the 2015 NOTS.  Defendants argue BANA was not the servicer in December 2014,

14  *id.*, or in February 2015, Mot. at 6–7; Reply at 3.  Plaintiff's allegations state, "[s]ubsequently,

15  although all payments had been made, Bank of America and others filed a notice of trustee sale

16  with a sale date of February 2, 2015."  Compl. ¶ 19.  Yet in opposition to the motion to dismiss,

17  plaintiff argues defendants have not submitted any facts subject to judicial notice to show that

18  Green Tree Servicing LLC, as opposed to BANA, was the servicer at the time the NOTS was

19  recorded in 2014.  *See* Opp'n at 8.  Plaintiff also argues that her allegations undercut the validity

20  of defendants' NOTS in 2014, on which defendants rely for the argument that BANA was not the

21  servicer.  *Id.* at 7.

22          Although the complaint could be drafted more clearly, drawing all inferences in

23  favor of plaintiff, plaintiff's allegations with respect to the 2015 NOTS are sufficient to state a

24  claim against BANA.  As to whether BANA was actually the servicer at the time of the 2015

25

26

27          [7] Exhibit K refers to the 2015 NOTS as opposed to the 2014 NOTS.  RJN, Ex. K.  The court assumes BANA either intended to cite Exhibit J, RJN, Ex. J, which refers to the 2014 NOTS, or argue it was not the servicer in 2015.

28

NOTS, that is an argument for another day.  With respect to other defendants, however, plaintiff has not alleged any violation by any one of them as a servicer of plaintiff's loan.

Defendants' motion to dismiss is DENIED as to plaintiff's claim under sections 2924.18 and 2923.6 against BANA.  Defendants' motion to dismiss claim is GRANTED as to the other defendants.

2.      Section 2923.7 (Single Point of Contact)

The California legislature enacted a single point of contact (SPOC) provision, California Civil Code section 2923.7, to prevent borrowers from being given the runaround when seeking loss mitigation procedures.  *See Jolley*, 213 Cal. App. 4th at 904–05.  To that end, section 2923.7 provides, in relevant part:

> (a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.
>
> (b) The single point of contact shall be responsible for doing all of the following:
>
> (1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.
>
> (2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.
>
> (3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.
>
> (4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.
>
> (5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.
>
> . . .
>
> (e) For the purposes of this section, "single point of contact" means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive.  The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's

11

situation and current status in the alternatives to foreclosure process.

Cal. Civ. Code § 2923.7(a)–(e).

Plaintiff alleges that she was not assigned a SPOC until after she completed the TPP application, and even after the assignment, her SPOC was non-responsive to her inquiries and failed to provide requested information regarding foreclosure prevention alternatives. Compl. ¶ 32. BANA argues plaintiff's claim under section 2923.7 fails because she concedes that she had a SPOC assigned to her. Mot. at 7. However, plaintiff's concession that she had been assigned a SPOC does not preclude the possibility of a section 2923.7 violation. "[A] mortgage servicer may not simply make a nominal 'appointment' of an SPOC who never communicates with the borrower." *Mungai v. Wells Fargo Bank*, No. 14-00289, 2014 WL 2508090, at *10 (N.D. Cal. June 3, 2014) (citation omitted). Finding compliance in a case where a mortgage servicer simply assigns a SPOC who then fails to communicate with the borrower would defeat the legislative intent behind the SPOC requirement. *Id.*; *see Jolley*, 213 Cal. App. 4th at 804–05.

However, because section 2923.7 states that "[u]pon request from a borrower . . . the mortgage servicer shall promptly establish a single point of contact," it is unclear from plaintiff's allegation not only which defendant assigned the SPOC but also the other defendants' alleged violation with respect to this section, if the court is to assume BANA as the mortgage servicer assigned the SPOC. Accordingly, the court GRANTS defendants' motion to dismiss plaintiff's section 2923.7 claim WITH LEAVE TO AMEND with respect to all defendants, subject to Federal Rule of Civil Procedure 11.

B.   Rosenthal Act

The Rosenthal Act is intended "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1. Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). A mortgage servicer and an original lender may be "debt collectors" under the

Rosenthal Act.  *See id.*; *see also Reyes v. Wells Fargo Bank, N.A.*, No. 10-01667, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011) (collecting cases).  This court has previously recognized that the definition of "debt collector" is broader under the Rosenthal Act than it is under its federal counterpart, the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*  *Barria v. Wells Fargo Bank, N.A.*, No. 15-01413, 2016 WL 474319, at *6 (E.D. Cal. Feb. 8, 2016).  Plaintiff alleges BNYM is both the beneficiary and creditor of the Property.  Compl. ¶ 4.  Given that the Property is security for the loan, the court presumes plaintiff means BNYM was the beneficiary and creditor with respect to the loan.  Plaintiff also alleges BANA serviced the loan at issue.  *Id.*  ¶¶ 10–14.  Thus, for purposes of this motion, under the Rosenthal Act defendants are "debt collectors," whether as mortgage lenders or mortgage servicers.

This court also has previously recognized that a foreclosure on a deed of trust does not give rise to a claim under the Rosenthal Act.  *Barria*, 2016 WL 474319, at *6.  The Rosenthal Act applies only if a claim arises out of debt collection activities beyond the scope of the ordinary foreclosure process.  *Id.*; *Reyes*, 2011 WL 30759, at *19.  Generalized allegations with respect to the execution of a nonjudicial foreclosure process are insufficient to state a claim under the Rosenthal Act or detailed enough to give defendants a fair notice of wrongful acts.  *Barria*, 2016 WL 474319, at *6.

Accordingly, defendants' motion to dismiss plaintiff's claim under the Rosenthal Act is GRANTED WITH LEAVE TO AMEND, to add any factual allegations regarding conduct by defendants outside the scope of an ordinary foreclosure process.

    C.    <u>California Business and Professions Code Section 17200 *et seq.* (UCL)</u>

        1.    <u>Standing</u>

To have standing under the UCL, a plaintiff must have "suffered injury in fact" and "lost money or property."  Cal. Bus. & Prof. Code § 17204.  Because the "injury in fact" requirement under the UCL is the same as that for federal standing, to establish "injury in fact" here, a plaintiff must establish there was "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (internal quotation marks and

13

1   citations omitted).  To satisfy the standing requirement, plaintiff must either "(1) establish a loss

2   or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury,

3   and (2) show that that economic injury was the result of, i.e., caused by, the unfair practice . . . ."

4   *Id.* (emphasis removed).  Lost money or property, an economic injury, is one such form of injury

5   in fact under the UCL.  *Id.*

6         Where a plaintiff has made payments to the mortgage servicer in connection with

7   the business practice that is the subject of the UCL claim, plaintiff has standing to state a UCL

8   claim.  *Reyes*, 2011 WL 30759, at *21.

9            2.   <u>Unfair, Unlawful or Fraudulent</u>

10         Under the first prong of UCL, "unfair" practices, this court has previously

11   summarized the various definitions of "unfair" under the UCL as provided by the California

12   courts:

13         1. "An act or practice is unfair if the consumer injury is substantial,
    is not outweighed by any countervailing benefits to consumers or to

14   competition, and is not an injury the consumers themselves could
    reasonably have avoided."  *Daugherty v. Am. Honda Motor Co.,*

15   *Inc.*, 144 Cal.App.4th 824, 839 (2006).

16         2. "'[U]nfair' business practice occurs when that practice offends
    an established public policy or when the practice is immoral,

17   unethical, oppressive, unscrupulous or substantially injurious to
    consumers."  *Smith v. State Farm Mut. Auto. Ins. Co.*, 93

18   Cal.App.4th 700, 719 (2001) (internal citation and quotation marks
    omitted).

19

20         3. An unfair business practice means "the public policy which is a
    predicate to the action must be 'tethered' to specific constitutional,

21   statutory or regulatory provisions."  *Scripps Clinic v. Superior*
    *Court*, 108 Cal.App.4th 917, 940 (2003).

22   *Vincent v. PNC Mortgage, Inc.*, No. 14-00833, 2014 WL 2766116, at *8 (E.D. Cal. June 18,

23   2014).

24         In terms of a claim under the second prong, "unlawful" practices a plaintiff must

25   show a violation of some independent law.  *See Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th

26   377, 383 (1992).  The predicate violation may be federal, state, local, or common law.  *Id.*

27   (section 17200 "borrows" violations of other laws and treats them as unlawful practices

28   actionable separately under section 17200).  Because the statute borrows violations of other laws,

1   a failure to state a claim under the underlying law translates to a failure to state a claim under the

2   unlawful prong.  *See Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838 (Cal. Ct. App. 1994).

3            Lastly, the fraudulent prong of the UCL is "governed by the reasonable consumer

4   test: a plaintiff may demonstrate a violation by show[ing] that [reasonable] members of the public

5   are likely to be deceived."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010)

6   (citation omitted).  A UCL "plaintiff need not show that he or she or others were actually

7   deceived or confused by the conduct or business practice in question."  *Schnall v. Hertz Corp.*,

8   78 Cal. App. 4th 1144, 1167 (2000).  Whether a business practice is deceptive will usually be a

9   question of fact not appropriate for decision on a motion to dismiss.  *Williams v. Gerber Products*

10  *Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  At the same time, an unfair practice claim grounded in

11  fraud must be pled with the particularity required by Federal Rule of Civil Procedure 9(b).  *Vess*,

12  317 F.3d at 1103.

13           Here, plaintiff has not satisfied the requirements of the unfair and unlawful prongs

14  of the UCL.  Plaintiff merely alleges, in conclusory fashion, that defendants' actions were unfair

15  and unlawful.  For the unfairness prong, plaintiff merely restates the elements of the law.  Compl.

16  ¶ 44.  For the unlawful prong, plaintiff argues generally that defendants have violated statutes,

17  and then vaguely points to "statutes implemented to protect debtors from unfair collection

18  practices, which necessarily includes the [p]laintiff, as set forth above."  *Id.* ¶ 45.  If plaintiff

19  means to reference the Rosenthal Act, she has not stated a claim under the Rosenthal Act as

20  explained above.  Thus, plaintiff has not met the requirement of stating "with reasonable

21  particularity the facts supporting the statutory elements of the violation" for the unlawful prong.

22  *Barria*, 2016 WL 474319, at *9 (citations omitted).

23           With respect to the third prong, fraudulent practices, plaintiff alleges sufficient

24  facts to state a claim against BANA.  Plaintiff alleges that the public is likely to be deceived by

25  BANA's practices, followed here, in notifying and promising plaintiff a permanent loan

26  modification after three trial payments without intending to provide the loan modification.

27  Compl. ¶¶ 47–49.  However, plaintiff has not alleged sufficient facts under the fraudulent prong

28  with respect to the other defendants.  Plaintiff alleges that all "defendants knew that it would be

15

1   very difficult to receive modification or other loss mitigation options," and that "defendants were

2   not conducting any loan modification review" even though they represented they were.  Plaintiff

3   has not alleged what role defendants other than BANA had in the servicing of her mortgage.

4         The court DENIES defendants' motion to dismiss plaintiff's UCL claim against

5   BANA with respect to the fraudulent prong and GRANTS the motion as to the rest of the UCL

6   claim and the other defendants, but WITH LEAVE TO AMEND.

7         D.      Breach of Contract

8         A cause of action for breach of contract requires the pleading of (1) the existence

9   of a contract, (2) plaintiff's performance or excuse for failure to perform, (3) defendant's breach,

10  and (4) damage to plaintiff resulting therefrom.  *McKell v. Washington Mut., Inc.*, 142 Cal. App.

11  4th 1457, 1489 (2006).  In the specific context of a TPP, the Ninth Circuit has held that, "a TPP

12  offered pursuant to HAMP is a contract, and a party to that contract may sue for breach if the

13  lender violates a term contained within the four corners of the TPP."  *Corvello*, 728 F.3d at 880;

14  *see also Wigod v. Wells Bank*, N.A., 673 F.3d 547, 563 (7th Cir. 2012).

15        Here, defendants attack the first two prongs and argue plaintiff has not alleged the

16  existence of a contract, or plaintiff's performance or nonperformance.  Specifically, defendants

17  contend plaintiff fails to set out the terms of the contract verbatim or attach a copy of the alleged

18  contract to the complaint.  Mot. at 14.  However, the California Supreme Court has stated "a

19  plaintiff may plead the legal effect of the contract rather than its precise language."  *Constr.*

20  *Protective Servs., Inc. v. TIG Specialty Ins. Co.*, 29 Cal. 4th 189, 199 (2002), *as modified* (Nov.

21  14, 2002); *Miles v. Deutsche Bank Nat'l Trust Co.*, 236 Cal. App. 4th 394, 402 (2015).  Thus,

22  plaintiff does not need to set out the terms of the contract verbatim or attach a copy.  Plaintiff

23  alleges in the complaint that BANA informed her on or about May 14, 2014 she had been

24  approved for a TPP under HAMP.  Compl. ¶ 14.  The written notification informed plaintiff she

25  could accept the TPP offer by making the first payment, and upon making all three TPP payment;

26  the trial loan modification would then become permanent.  *Id.*  Plaintiff alleges sufficiently facts

27  to plead the existence of a contract.

28

Defendants also contend plaintiff fails to plead performance or nonperformance. Mot. at 14.  Even if plaintiff performed, defendants contend, plaintiff does not allege the details of that performance—the amount, timing, and other details of the three payments allegedly required by the TPP.  *Id.*  Plaintiff does allege in the complaint that she made the first payment on time as required by the TPP, and the subsequent payments as well, all of which she says were accepted by defendants.  Compl. ¶¶ 15–16, 62.  Plaintiff alleges the TPP's terms required three payments, and plaintiff made the three payments.  *Id.*  Plaintiff has alleged performance.

However, plaintiff does not provide any allegations with respect to the existence of a contract between plaintiff and the defendants other than BANA.  Plaintiff alleges BANA provided the notification that plaintiff was approved for the TPP.  *Id.*  ¶¶ 15–16.  Although plaintiff alleges defendants accepted and endorsed her payments, she also alleges it was defendant BANA that refused to accept any further payments from her.  *Id.* ¶ 18.

Accordingly, defendants' motion to dismiss plaintiff's breach of contract claim is DENIED with respect to defendant BANA but GRANTED with respect to other defendants, WITH LEAVE TO AMEND consonant with Rule 11.

E.      Implied Covenant of Good Faith and Fair Dealing

"There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract."  *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960).  A breach of contract may be established on the basis of either an express provision of the contract or on the implied covenant of good faith and fair dealing.  *See Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 55 (2002) ("every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of either party to receive the fruits of the contract").  An implied covenant of good faith and fair dealing cannot contradict the express terms of a contract.  *Id.* (citing *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992)).  Further, because "the implied covenant operates to protect the express covenants or promises of [a] contract . . . [it] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in

1   the specific terms of [the parties'] agreement." *McClain v. Octagon Plaza, LLC*, 159 Cal. App.

2   4th 784, 805 (2008).

3   "Facts alleging a breach, like all essential elements of a breach of contract cause of

4   action, must be pleaded with specificity." *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App.

5   4th 1, 5 (2007). Thus, to state a claim for breach of the implied covenant of good faith and fair

6   dealing, a plaintiff must identify the specific contractual provision that was frustrated. *Rockridge*,

7   985 F. Supp. 2d at 1156; *see Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1154 (E.D.

8   Cal. 2010).

9   Defendants argue first that plaintiff has not alleged the existence of any contract.

10  Mot. at 15. Second, defendants contend plaintiff's allegations are too vague because the

11  complaint fails to identify any specific term that was frustrated. *Id.* The court has found above

12  that plaintiff has alleged the existence of a contract so far as the contract is between plaintiff and

13  BANA. Furthermore, plaintiff alleges she made the three payments as requested by the

14  notification she received on or about May 14, 2014. Compl. ¶ 73. And BANA accepted the

15  payments but then failed to provide a permanent loan modification. *Id.* ¶ 74. However, as with

16  plaintiff's breach of contract claim, plaintiff has not provided sufficient factual allegations to

17  show a contract existed between plaintiff and a defendant other than BANA. "[T]he implied

18  covenant operates to protect the express covenants or promises of [a] contract." *McClain v.*

19  *Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2008). Thus, with respect to defendants other

20  than BANA, plaintiff has not stated a claim for breach of implied covenant of good faith and fair

21  dealing.

22  Accordingly, so far as this claim is based on defendant BANA, defendants' motion

23  to dismiss is DENIED, but defendants' motion is GRANTED as to the rest of the defendants

24  WITH LEAVE TO AMEND, consonant with Rule 11.

25  /////

26  /////

27  /////

28  /////

1    F.    Fraud

2           "The elements of fraud are (a) a misrepresentation (false representation,

3    concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce

4    reliance; (d) justifiable reliance; and (e) resulting damage." *Hinesley v. Oakshade Town Ctr.*,

5    135 Cal. App. 4th 289, 294–95 (2005) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638

6    (1996)).  To plead a claim for fraud, plaintiff's allegations must be sufficiently detailed to meet

7    the heightened Rule 9(b) pleading standard.  *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 906

8    (N.D. Cal. 2011).

9           When bringing claims against multiple fraud defendants, a plaintiff "must provide

10   each and every defendant with enough information to enable them 'to know what

11   misrepresentations are attributable to them and what fraudulent conduct they are charged with.'"

12   *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F. Supp. 2d 1158, 1163 (C.D. Cal.

13   1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427, 1433 (N.D. Cal. 1988)).

14          Here, plaintiff takes the same generalized approach as she does in most of the

15   complaint.  Other than the single and insufficient allegation aimed at defendant BANA with

16   respect to waiving fees, costs and/or other charges in connection with the TPP, Compl. ¶ 86, all

17   the other allegations are directed towards all defendants as a group.  *Id.*  ¶¶ 85–91.  To proceed,

18   however, plaintiff must provide each defendant with sufficient information so the defendant

19   knows what fraudulent conduct it is being charged with.  *Pegasus Holdings*, 38 F. Supp. 2d at

20   1163 .  A complaint where the "fraudulent allegations do not target particular defendants" and

21   where the allegations take a global approach is unsatisfactory.  *Id.*

22          Defendants' motion to dismiss plaintiff's fraud claim is GRANTED WITH

23   LEAVE TO AMEND as to all defendants.

24   /////

25   /////

26   /////

27   /////

28   /////

19

1    G.    Negligence

2         Plaintiff's seventh claim alleges that defendants had a duty imposed by California

3    Civil Code sections 2923.5 and 2924g(c)(1)(C), and the violations of those sections constitute

4    negligence per se.[8]

5         Negligence per se is based on an evidentiary presumption that a party failed to

6    exercise due care if: (1) it violated a statute, ordinance, or regulation of a public entity; (2) the

7    violation proximately caused death or injury to a person or property; (3) the death or injury

8    resulted from an occurrence of the nature the statute, ordinance, or regulation was designed to

9    prevent; and (4) the person suffering the death or the injury to his or her person or property was

10   one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

11   Cal. Evid. Code § 669.  This doctrine does not establish a cause of action distinct from

12   negligence; instead, "an underlying claim of ordinary negligence must be viable before the

13   presumption of negligence of Evidence Code section 669 can be employed." *Spencer*, 642 F.

14   Supp. 2d at 1162 (citing *Cal. Serv. Station & Auto Repair Ass'n v. Am. Home Assurance Co.*,

15   62 Cal. App. 4th 1166, 1178 (1998)).  The court thus looks first to whether plaintiff's underlying

16   allegations of ordinary negligence are viable.

17        To state a claim for negligence, a plaintiff must allege "(1) the defendant owed the

18   plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately

19   caused the plaintiff's damages or injuries." *Lueras v. BAC Home Loans Servicing, LP*,

20   221 Cal. App. 4th 49, 62 (2013).  The defendant's duty of care is a prerequisite to any claim for

21   negligence. *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991).

22   Whether a duty of care exists is a question of law. *First Interstate Bank of Ariz., N.A. v. Murphy,*

23   *Weir & Butler*, 210 F.3d 983, 987 (9th Cir. 2000).

24

25   _____

26   [8] Plaintiff also alleges defendants had duties imposed by California Civil Code section
     2923, which states "the lien of a mortgage is special, unless otherwise expressly agreed, and is
27   independent of possession."  Compl. ¶ 96.  The court assumes this reference should be to section
     2923.5 as plaintiff makes no mention of section 2923 elsewhere in the complaint and does not
28   explain how that section in particular imposes a duty on defendants.

1    As a general rule, banks owe borrowers no duty of care unless the institution's

2    involvement "exceed[s] the scope of its conventional role as a mere lender of money."  *Nymark*,

3    231 Cal. App. 3d at 1096.  But "*Nymark* does not support the sweeping conclusion that a lender

4    never owes a duty of care to a borrower."  *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th

5    872, 901 (2013) (internal quotation marks omitted).  Rather, the court weighs six factors to decide

6    whether a financial institution owes a borrower a duty of care:

7
8
9
10
> [1] the extent to which the transaction was intended to affect the
> plaintiff, [2] the foreseeability of harm to him, [3] the degree of
> certainty that the plaintiff suffered injury, [4] the closeness of the
> connection between the defendant's conduct and the injury suffered,
> [5] the moral blame attached to the defendant's conduct, and [6] the
> policy of preventing future harm.

11    *Nymark*, 231 Cal. App. 3d at 1098 (quoting *Connor v. Great W. Sav. & Loan Assn.*, 69 Cal. 2d

12    850, 865 (1968)). These six factors are commonly referred to as the "*Biakanja* factors" after

13    *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958).

14    "California courts have not settled on a uniform application of these six factors in

15    mortgage cases."  *Martinez v. Flagsar Bank, FSB*, No. 15-1934, 2016 WL 3906810, at *7 (E.D.

16    Cal. Jul. 19, 2016).  "Neither the California Supreme Court nor the Ninth Circuit has taken up this

17    question" either.  *Id.*  This court has previously considered this same question and ultimately held

18    that,

19
20
21
> [A] lender does owe a duty of care to a borrower not to make
> material misrepresentations about the status of an application for a
> loan modification and that a borrower would foreseeably be harmed
> by an inaccurate or untimely communication . . . about the status of
> a loan modification application.

22    *Martinez*, 2016 WL 3906810, at *8 (citing *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal.

23    App. 4th 941, 946–47 (2014)).

24    Here, plaintiff alleges defendant had a duty under California Civil Code section

25    2923.5 to act with reasonable care with respect to plaintiff's loss mitigation efforts.  Compl. ¶ 93.

26    Plaintiff's allegations with respect to defendants' negligence can be summarized as the following:

27    defendants (a) "refused to accept, mishandled and/or lost pertinent information submitted by

28    [p]laintiff including multiple tendered payments"; (b) failed to "abide by the terms entered into by

and between the parties"; (c) allowed their agents to record a notice of trustee's sale on the subject property; (d) "failed to employ an effective communication system internally"; (e) "failed to employ systems to safeguard and document assurances made by their representatives"; (f) "failed to rectify issues arising from inadequately servicing plaintiff's loan"; and (g) "various other unspecified acts of negligence," which the Complaint does not state explicitly.  *Id.* ¶ 95.

But again, plaintiff's complaint uses the terms "defendant" and "defendants" interchangeably and as a result obscures factual allegations to the extent they are meant to differentiate between BANA and other defendants.  Compl. ¶ 95.  For example, it is unclear from the complaint what duty, if any, each defendant owes to plaintiff.  In addition, it is uncertain how the allegations regarding effective communication system, systems to safeguard and document assurances, and a general statement of other acts of negligence relate to plaintiff's injury, which plaintiff alleges only generally:  "[a]s a direct and proximate result of said negligence, [p]laintiff has been substantially damaged in an amount to be proven at trial."  *Id.*  ¶ 97.

Plaintiff also alleges defendants were negligent in the face of a duty arising from section 2924g(c)(1)(C), which states in relevant parts:

> (c)(1) There may be a postponement or postponements of the sale proceedings, including a postponement upon instruction by the beneficiary to the trustee that the sale proceedings be postponed, at any time prior to the completion of the sale for any period of time not to exceed a total of 365 days from the date set forth in the notice of sale.  The trustee shall postpone the sale in accordance with any of the following:
>
> . . .
>
> (C) By mutual agreement, whether oral or in writing, of any trustor and any beneficiary or any mortgagor and any mortgagee.

Plaintiff does not allege when or if she had formed a mutual agreement with one or more defendants regarding postponing any of the sale proceedings.  Or if there was a mutual agreement, plaintiff does not allege how a defendant breached that duty, and the relation of that breach to plaintiff's injury.

Lastly, plaintiff's generalized allegation of "various other acts of negligence" is also insufficient to state a claim for similar reasons as stated above.  It is unclear from the broad

1    categorization what those acts of negligence are, what duties are related to those acts of

2    negligence, and how those acts relate to plaintiff's injuries.

3            Defendants' motion to dismiss plaintiff's negligence claim is GRANTED WITH

4    LEAVE TO AMEND.

5        H.    Promissory Estoppel

6            Under the promissory estoppel doctrine, "a promisor is bound when he should

7    reasonably expect a substantial change of position, either by act or forbearance, in reliance on his

8    promise, if injustice can be avoided only by its enforcement." *Youngman v. Nevada Irrigation

9    Dist.*, 70 Cal. 2d 240, 249 (1969).  The elements of promissory estoppel are "(1) a promise clear

10   and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his

11   reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be

12   injured by his reliance." *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal. App. 3d 885, 891 (1976);

13   *see Toscano v. Greene Music*, 124 Cal. App. 4th 685, 692 (2004).

14           Here, defendants attack only the first prong, arguing that plaintiff has not pleaded a

15   clear and unambiguous promise; they also argue again plaintiff has not set forth the terms of the

16   contract in full and thus the claim must be dismissed.  Mot. at 20.  However, to plead a

17   promissory estoppel claim, a promise need only to be "definite enough that a court can determine

18   the scope of the duty, and the limits of performance must be sufficiently defined to provide a

19   rational basis for the assessment of damages." *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218,

20   226 (2011), *as modified* (Feb. 9, 2011).  Plaintiff alleges the notification she received on or about

21   May 14, 2014 from BANA promised plaintiff her mortgage would be permanently modified if

22   she made the three required payments.  Compl. ¶ 14.  The promise made by the notification letter,

23   as alleged, provides a definite outline of BANA's duties.  *See In re Citimortgage, Inc. Home

24   Affordable Modification Program (HAMP) Litig.*, No. 11-2274, 2012 WL 1931030, at *4 (C.D.

25   Cal. Apr. 17, 2012) (allegations that plaintiffs' loans would be modified if they complied with

26   terms of TPP and their representations remain true is sufficiently clear and unambiguous

27   promise).

28   /////

Similar to plaintiff's breach of contract claim, plaintiff has alleged sufficient facts to state a claim against defendant BANA, but not against the other defendants. Accordingly, defendants' motion to dismiss plaintiff's promissory estoppel claim is DENIED with respect to defendant BANA but GRANTED to the other defendants WITH LEAVE TO AMEND. If plaintiff does seek to amend this claim, she is cautioned that this court previously has held that a promissory estoppel claim, an equitable claim, will not lie if plaintiff ultimately seeks the same remedy as for the breach of contract claims, or if, after a more developed factual record emerges, the court finds the alleged contract covered "the same subject matter" as that supporting the promissory estoppel claim. *Copart, Inc. v. Sparta Consulting, Inc.*, No. 14-00046, 2015 WL 5357931, at *5 (E.D. Cal. Sept. 14, 2015).

V.   <u>CONCLUSION</u>

In light of the foregoing, defendants' motion to dismiss is resolved as follows:

(1) DENIED as to plaintiff's claim under sections 2924.18 and 2923.6 against BANA and GRANTED as to the other defendants.

(2) GRANTED as to plaintiff's section 2923.7 claim with respect to all defendants WITH LEAVE TO AMEND.

(3) GRANTED as to plaintiff's claim under the Rosenthal Act WITH LEAVE TO AMEND.

(4) DENIED as to plaintiff's UCL claim against defendant BANA with respect to the fraudulent prong, but GRANTED as to the rest of the UCL claim and the other defendants WITH LEAVE TO AMEND.

(5) DENIED as to plaintiff's breach of contract claim with respect to defendant BANA, but GRANTED with respect to other defendants WITH LEAVE TO AMEND.

(6) DENIED so far as the implied covenant of good faith and fair dealing claim is pled against defendant BANA, but GRANTED as to the rest of the defendants WITH LEAVE TO AMEND.

(7) GRANTED as to plaintiff's fraud claim WITH LEAVE TO AMEND.

(8) GRANTED as to plaintiff's negligence claim WITH LEAVE TO AMEND.

1    (9) DENIED as to plaintiff's promissory estoppel claim with respect to defendant

2    BANA, but GRANTED as to the other defendants WITH LEAVE TO AMEND.

3    This order resolves ECF Nos. 6, 12.  Plaintiffs' first amended complaint is due

4    within twenty-one (21) days from the date of this order, along with a separate status report with

5    respect to whether the state action has been dismissed.

6    IT IS SO ORDERED

7    DATED:  August 18, 2016.

8

9    _____

10   UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28